IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:20-CR-00172 |
| | : | |
| v. | : | (Judge Wilson) |
| | : | |
| ESEYUIEL CARABALLO, | : | (Electronically Filed) |

**SENTENCING MEMORANDUM**

AND NOW, comes the defendant, Eseyuiel Caraballo, by his attorney, Ari D. Weitzman, and files this Sentencing Memorandum.

## I. INTRODUCTION

The crimes committed by Eseyuiel Caraballo are a direct result of his tortured childhood, the trauma of which was exacerbated by his mental health struggles and polysubstance addiction. These demons degraded his moral compass and clouded this first-time offender's judgement. But Mr. Caraballo voluntarily stopped buying and selling guns after he gained sobriety and mental clarity. And this transformation was not based upon an arrest, but because he desired to stop his criminal activities and clean himself up.[1]

---

[1] Mr. Caraballo's last purchase of firearm occurred on July 10, 2018. (PSR ¶ 6). He attempted to purchase a firearm on July 26 and August 26, 2018 but was unable to do so. (PSR ¶ 7). He was approached by and confessed to law enforcement in January 2019.

Along with his desire to reform, Celeste Thomas, a woman with whom Mr. Caraballo fell in love with, was a catalyst who helped change his ways. Her influence led Mr. Caraballo to become sober, obtain and maintain gainful employment, and assisted his return to being a nurturing and supportive father to his two sons.



*Eseyuiel Caraballo with his sons, Carmine Ivanoff (left) and Eseyuiel Caraballo (right).*

Since August of 2018, Mr. Caraballo has been drug and crime free. Unfortunately, the magnitude of his transformation is paralleled by the tragedy in which he finds himself—on the precipice of entering federal prison.

While the crimes Mr. Caraballo committed had potentially dire consequences, serious consideration is warranted in assessing an appropriate sentence for this flawed man whose life's trajectory is on the upswing. For his criminal conduct is an anomaly,

2

and any jail sentence is counterproductive considering the strides Mr. Caraballo has made.

II.     ARGUMENT

### A. Mr. Caraballo's difficult childhood continues to negatively impact his life and was a direct cause of the commission of instant offenses.

Mr. Caraballo is one of nine children. (PSR ¶ 33). His father, Alberto Caraballo, was a womanizer, who gambled and drank alcohol to excess. (PSR ¶ 34). Additionally, Alberto Caraballo was emotionally and physically abusive. *Id.* In particular, Alberto Caraballo would regularly beat on his wife, Aurea Oritz, who was defenseless. Though he was the cheat, he constantly accused Mrs. Ortiz of being unfaithful; he was controlling and overbearing. And as a child, Eseyuiel Caraballo was also an easy target because he was "slow," (having a learning disorder) depressed, and overweight. Eseyuiel Caraballo was traumatized by the abuse he witnessed his mother endure, and that which his father doled out on him.

Eseyuiel Caraballo recalls times when the family had limited food. His mother would insist that Eseyuiel Caraballo eat in place of her, but he always shared his portion with his mother. Recounting these events helps Eseyuiel Caraballo have self-worth as he sorts through his difficult past.

The Caraballo family has a significant mental health history, which resulted in Mr. Caraballo's uncle and brother committing suicide. (PSR ¶ 43). As a child, Mr. Caraballo

suffered from depression, anxiety and attention deficit disorder. (PSR ¶ 42). His childhood was marred by bouts of self-mutilation, an attempted suicide, and a stay at an inpatient mental health facility. *Id.* Indeed, Mr. Caraballo has always felt like "the outcast." (PSR ¶ 34). And while he is now stable, many of his early-on struggles continue to haunt him. Fortunately, Mr. Caraballo possess great insight, and desires mental health treatment in recognizing his dysfunctional past. Mr. Caraballo knows that he must heal to remain balanced and law-abiding. (PSR ¶ 43).

Alberto Caraballo died in 2013 from heart disease and diabetes. (PSR ¶ 34). Eseyuiel Caraballo still laments the lack of closure between he and his father. Eseyuiel Caraballo would have accepted any kind word or loving gesture during his father's transition, but true to form, there were no pleasantries, apologies or regrets expressed. It's unsurprising that following his father's death, Mr. Caraballo's experimentation with drugs turned into an addiction with suicidal undertones. (PSR ¶ 45). And it was during this time period, with this diminished state of mind, that Mr. Caraballo bought and sold guns, having little thought about the potential consequences to himself and others.

**B. Mr. Caraballo has transformed himself and has not committed crimes nor abused drugs. Though he has gainful employment, however, he still struggles financially, and the prospect of jail haunts him.**

Since meeting Celeste Thomas in 2018, Mr. Caraballo has refrained from using drugs and has maintained employment. (PSR ¶¶ 46, 47). However, due to his lack of education, Mr. Caraballo (at present) is confined to doing menial labor where he earns

non-livable wages. Affordable housing is one of his biggest struggles, particularly because Mr. Caraballo and Miss Thomas are no longer romantically involved and don't live together.

Before rents were increased, the couple resided at an apartment in Lemoyne, Pennsylvania. However, since February 2022, Mr. Caraballo has resided at the Red Roof Inn (for several months), moved in with his mother and slept on her sofa, and now lives at the Scottish Inn where he pays approximately $1,000 a month and rents a room.



Notwithstanding his struggles, Mr. Caraballo is stable. He continues to enjoy a close relationship with his children and maintains a close friendship with Miss Thomas. Mr. Caraballo's psyche has improved, and he has not, and will not, slip back into his old

ways of abusing drugs and contemplating self-harm. But he is someone who needs to be—and deserves to be—supported, valued and loved.

### C. An advisory guideline sentence is too harsh, excessive, or is "greater than necessary."

Justice Anthony Kennedy observed that long sentences, among other things, are "an ongoing injustice of great proportions," and that "long sentences have appalling effects on people's lives." *See* (public conversation with Harvard Law School Dean Martha Minow, reported in the *Harvard Gazette* of October 22, 2015, Kennedy assails prison shortcomings – Harvard Gazette).

Here, even a modest prison sentence seems unnecessary, considering the strides that Mr. Caraballo has made over the past four years.

### D. A sentence of incarceration will hinder Mr. Caraballo's rehabilitation.

A court may vary downward where it determines that a within-guideline sentence would impair a defendant's rehabilitation. *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (upholding below-guideline sentence as sufficiently reflecting the seriousness of the offense while allowing the possibility for defendant to reform and go on to live a productive life upon release in his mid-thirties).

In *Collington*, the district court imposed the mandatory minimum sentence of 120 months while varying below the advisory range of 188-235. In affirming sentence, the Sixth Circuit Court of Appeals noted that the district court identified several factors which made Collington's case an outlier and which the guidelines did not account for. It

6

was noted that Collington had only ever served a 7-month sentence before and that his family history, which included the deaths of his mother and father, warranted a below-guidelines sentence. He was also sentenced to undergo a mental health evaluation and placed on five years of supervised release, important factors considered by the Sixth Circuit in its reasonableness analysis. *Id.* at 809-810.

The only form of detention Mr. Caraballo, now 36, has experienced was at a juvenile placement when he was 13. And his adjustment to pretrial supervision suggests a non-custodial sentence is sufficient, but not greater than necessary, to achieve the goals of the sentencing. Just as in *Collington*, Your Honor should vary below the advisory range, recognizing the unique circumstances of Mr. Caraballo's difficult life and his positive adjustments since he last committed a crime.

**E.    Prison has greater significance for those imprisoned for the first time.**

For first-time offenders, long periods of incarceration can do more damage than good by isolating individuals from their communities. "When prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contracts in the community, and become removed from legitimate opportunities, all of which promote recidivism." Valerie Wright, *Deterrence in Criminal Justice, The Sentencing Project,* at 7. (Nov. 2010). Indeed, studies reveal that low-risk

offenders who are sentenced to long periods of incarceration are more likely to reoffend. *Id.; see also United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming downward variance, justified in part by court's finding that prison would mean more to defendant than one who has been imprisoned before).

### III.  CONCLUSION

Mr. Caraballo is employed at Spirit Moving Company, recently leaving his former job for a higher wage. His income is supplemented by $236 a month in Social Security Disability. (PSR ¶ 56). He is stable, tries to be a loving and supportive father, and speaks regularly with Miss Thomas as they contemplate their future. He is a good man who made poor choices at the lowest point in his life.

Mr. Caraballo's criminal actions are at odds with his true character. Though the advisory guideline range calls for jail time, serious consideration is warranted whether justice is promoted by incarcerating this troubled man who has pulled is life together. Mr. Caraballo's reformation during the past four years—coupled with his lack of criminal history—demonstrate that he is a productive member of society who will only be further marginalized by serving time in jail.

Respectfully submitted,

Date:  June 10, 2022

*/s/ Ari D. Weitzman*
ARI D. WEITZMAN, ESQUIRE
Asst. Federal Public Defender
Attorney ID# PA81927
100 Chestnut Street, 3rd Fl.
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*ari_weitzman@fd.org*
 *Attorney for Eseyuiel Caraballo*

# CERTIFICATE OF SERVICE

I, Ari D. Weitzman, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Sentencing Memorandum**, via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

CARLO D. MARCHIOLI, ESQUIRE
United States Attorney's Office
228 Walnut Street, Room 220
Harrisburg, PA  17101
*Carlo.d.marchioli@usdoj.gov*

ESEYUIEL CARABALLO


Date:  June 10, 2022                     */s/ Ari D. Weitzman*
                                         ARI D. WEITZMAN, ESQUIRE
                                         Asst. Federal Public Defender
                                         Attorney ID# PA81927
                                         100 Chestnut Street, 3rd Fl.
                                         Harrisburg, PA  17101
                                         Tel. No. 717-782-2237
                                         Fax No. 717-782-3881
                                         *ari_weitzman@fd.org*
                                          *Attorney for Eseyuiel Caraballo*